1  JAMES P. BENNETT (CA SBN 65179)
   JBennett@mofo.com
2  RACHEL KREVANS (CA SBN 116421)
   RKrevans@mofo.com
3  BARBARA BARATH (CA SBN 268146)
   BBarath@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  Attorneys for Defendant
   APPLE INC.
8

9
10                    UNITED STATES DISTRICT COURT
11                   NORTHERN DISTRICT OF CALIFORNIA
12                        SAN FRANCISCO DIVISION

13  ZEROCLICK, LLC, a Texas limited liability    Case No. 3:15-CV-04417-JST
    company,
14                                               **ESI STIPULATION AND
                   Plaintiff,                    [PROPOSED] ORDER**
15
          v.                                     Date:  January 13, 2016
16                                               Time:  2:00 PM
    APPLE INC., a California corporation,        Place: Courtroom 9, 19th Floor
17                                               Judge: Jon S. Tigar
                   Defendant.
18
19
20
21
22
23
24
25
26
27
28

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2. **Proportionality and ESI Guidelines.** To further the application of the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2(C), requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable. Where the discovery request is potentially burdensome to the responding party, the parties should consider options such as staging discovery and sampling, in an attempt to reduce the costs of production.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. The parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Model Stipulated Order Re: the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

5. **General ESI.** General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "Email"). The limits discussed in Paragraphs 3 to 5 above shall apply to General ESI. Nothing contained herein, however, shall limit any party's obligation to disclose any document that that party intends to rely upon to support any claim or defense, regardless of whether such document constitutes ESI, General ESI or Email.

6. **Email.** To obtain Email, parties must propound specific requests. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

7. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

8. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines. The parties shall make good faith efforts to identify appropriate email custodians and produce email on the agreed upon schedule, but reserve the right to seek email from additional email custodians identified through discovery.

9. The parties shall meet and confer to reach agreement on the list of custodians for purposes of collection, review and production of Email. In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products). The parties then shall meet and confer to reach agreement on document custodians. Each requesting party shall limit its Email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request. Email, shall be collected for each individual custodian from the personal computers, network resources, and other electronic devices that those individuals use for work purposes.

10. The parties shall also meet and confer to reach agreement on search terms to be used for electronic searches of the files from those custodians. Each requesting party shall limit its Email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based

1  on the size, complexity, and issues of this specific case. The Court encourages the parties to
2  confer on a process to test the efficacy of the search terms. The search terms shall be narrowly
3  tailored to particular issues. Indiscriminate terms, such as the producing company's name or its
4  product name, are inappropriate unless combined with narrowing search criteria that sufficiently
5  reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*,
6  "computer" and "system") narrows the search and shall count as a single search term. A
7  disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the
8  search, and thus each word or phrase shall count as a separate search term unless they are variants
9  of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged
10 to limit the production and shall be considered when determining whether to shift costs for
11 disproportionate discovery. Notwithstanding prior agreement on the search terms to be used for
12 electronic searches, should a search produce an unreasonably large number of non-responsive or
13 irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss
14 application of further negative search restrictions (e.g., if a single search was for "card" and
15 ninety percent of the resulting documents came from the irrelevant term "credit card," a negative
16 limitation to ignore documents only returned as a result of "credit card" may be applied to remove
17 these documents).  The party receiving production shall not unreasonably oppose such further
18 restrictions designed to filter immaterial search results.  Should a party serve Email production
19 requests with search terms beyond the limits agreed to by the parties or granted by the Court
20 pursuant to this paragraph, this shall be considered in determining whether any party shall bear all
21 reasonable costs caused by such additional discovery.

22      11.     Nothing in this Order prevents the parties from agreeing to use technology assisted
23 review and other techniques insofar as their use improves the efficacy of discovery. Such topics
24 should be discussed pursuant to the District's E-Discovery Guidelines.

25      12.     **Format for production of documents – documents existing in electronic**
26 **format.**  Except as otherwise provided for in this Stipulation, all documents existing in electronic
27 format shall be produced in multiple page, searchable PDF format at a resolution of at least 300
28 dpi in accordance with the following:

1         A.   PDF files shall be produced along with Concordance/Opticon image load
2  files that indicate the beginning and ending of each document.

3         B.   For documents which already exist in PDF format prior to production (i.e.,
4  which the producing party receives from a client or third party in PDF format), the producing
5  party may provide them in that same PDF format, whether searchable or non-searchable. For
6  documents converted to PDF format prior to production, the producing party shall make
7  reasonable efforts to convert to searchable PDF.

8         C.   **Metadata.**  Load files should include, where applicable, the information
9  listed in the Table of Metadata Fields, attached as Exhibit A. However, the parties are not
10 obligated to include metadata for any document that does not contain such metadata in the
11 original, if it is not possible to automate the creation of metadata when the document is collected.
12 The parties reserve their rights to object to any request for the creation of metadata for documents
13 that do not contain metadata in the original.

14        D.   **Production media and encryption of productions.**  Unless otherwise
15 agreed, the parties shall provide document productions in the following manner: The producing
16 party shall provide the production data on CDs, DVDs, external hard drives, or SFTP, as
17 appropriate. The producing party shall encrypt the production data using WinRAR encryption,
18 and the producing party shall forward the password to decrypt the production data separately
19 from the CD, DVD, external drive, or SFTP on which the production data is saved.

20    13.  **Format for production of documents – hardcopy or paper documents.**  All
21 documents that are hardcopy or paper files shall be scanned and produced in the same manner as
22 documents existing in electronic format, above.

23    14.  **Source code.**  This Stipulation does not govern the format for production of source
24 code, which shall be produced pursuant to the relevant provision of the Protective Order.

25    15.  **Parent and child emails.**  The parties shall produce email attachments
26 sequentially after the parent email.

27    16.  **Native files.**  The parties will meet and confer to discuss requests for the
28 production of files in native format, on a case-by-case basis. If the parties are unable to reach

1  agreement with regard to requests for additional documents in native-file format, the parties
2  reserve the right to seek relief from the Court. Documents produced natively shall be represented
3  in the set of imaged documents by a slipsheet indicating the production identification number and
4  confidentiality designation for the native file that is being produced.

5        17.   **Databases.**  Certain types of databases are dynamic in nature and will often
6  contain information that is neither relevant nor reasonably calculated to lead to the discovery of
7  admissible evidence.  Thus, a party may opt to produce relevant and responsive information from
8  databases in an alternate form, such as a report or data table.  These reports or data tables will be
9  produced in a static format.

10      The parties agree to identify the specific databases, by name, that contain the relevant and
11  responsive information that parties produce.

12        18.   **Requests for hi-resolution or color documents.**  The parties agree to respond to
13  reasonable and specific requests for the production of higher resolution or color images.  Nothing
14  in this Stipulation shall preclude a producing party from objecting to such requests as
15  unreasonable in number, timing or scope, provided that a producing party shall not object if the
16  document as originally produced is illegible or difficult to read.  The producing party shall have
17  the option of responding by producing a native-file version of the document.  If a dispute arises
18  with regard to requests for higher resolution or color images, the parties will meet and confer in
19  good faith to try to resolve it.

20        19.   **Foreign language documents.** All documents shall be produced in their original
21  language.  Where a requested document exists in a foreign language and the producing party also
22  has an English-language version of that document that it prepared for non-litigation purposes
23  prior to filing of the lawsuit, the producing party shall produce both the original document and all
24  English-language versions.  In addition, if the producing party has a certified translation of a
25  foreign-language document that is being produced, (whether or not the translation is prepared for
26  purposes of litigation) the producing party shall produce both the original document and the
27  certified translation.  Nothing in this agreement shall require a producing party to prepare a
28  translation, certified or otherwise, for foreign language documents that are produced in discovery.

ESI STIPULATION AND [PROPOSED] ORDER
Case No. 3:15-CV-04417-JST
sf-3604626
5

20. **Document preservation.**  The parties shall preserve all hardcopy documents and reasonably accessible ESI relating to the issues relevant to this action.   The parties shall exercise reasonable diligence to ensure that document retention notices are distributed to custodians who are likely to have relevant documents.  Furthermore, the parties shall not intentionally destroy any relevant documents that they know or reasonably suspect contain relevant information.  The parties shall meet and confer regarding any reasonable additional document preservation measures that may be required to ensure that relevant information is not destroyed during the pendency of this litigation.

Dated:  February 12, 2016            MORRISON & FOERSTER LLP

                                     */s/ Barbara Barath*
                                     Barbara Barath

                                     Attorneys for Defendant
                                     APPLE INC.

Dated:  February 12, 2016            RUSS AUGUST & KABAT

                                     */s/ Brian Ledahl*
                                     Brian Ledahl

                                     Attorneys for Plaintiff
                                     ZEROCLICK, LLC

**IT IS SO ORDERED.**

Dated:  February 17, 2016

*IT IS SO ORDERED*
Judge Jon S. Tigar
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**ATTESTATION OF E-FILED SIGNATURE**

I, Barbara Barath, am the ECF User whose ID and password are being used to file this **ESI Stipulation and [Proposed] Order**. In compliance with Local Rule 5-1(i)(3), I hereby attest that Brian Ledahl has concurred in this filing.

Dated: February 12, 2016          By:   */s/ Barbara Barath*
                                         BARBARA BARATH

                                         *Attorneys for Apple Inc.*