UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEROCLICK, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 15-cv-4417-JST<br><br>**ORDER TO SHOW CAUSE AND VACATING HEARINGS**<br><br>Re: ECF No. 107 |

Before the Court is Defendant Apple Inc.'s motion to dismiss this action for lack of standing. For the reasons set forth below, the Court will order Plaintiff Zeroclick, LLC, to show cause why this action should not be dismissed for lack of standing and lack of subject matter jurisdiction.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Zeroclick, LLC ("Zeroclick I"), alleges that Apple's products infringe certain claims of two of its patents ("patents-in-suit"): (1) claims 2 and 52 of United States Patent Number 7,818,691 ("'691 patent"); and (2) claim 19 of United States Patent Number 8,549,443 ("'443 patent"). The patents-in-suit are both entitled "Zeroclick." ECF No. 1-1 at 2; ECF No. 1-2 at 2. The patents essentially share a specification and claim priority to a United Kingdom patent application filed on May 11, 2000.

On August 16, 2016, the Court issued a claim construction order, in which it concluded that claims 2 and 52 of the '691 patent, and claim 19 of the '443 patent, were invalid for indefiniteness. ECF No. 60.

On June 1, 2018, the Federal Circuit reversed this Court's claim construction order.

*Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003 (Fed. Cir. 2018). The court of appeals held that this Court erred in concluding that two disputed terms were means-plus-function terms under 35 U.S.C. § 112, ¶ 6. *Id.* at 1006-07. It reasoned that, because neither of the terms in question uses the word "means," Apple was required to rebut the presumption that 35 U.S.C. § 112, ¶ 6 does not apply to either term, but Apple had failed to do so. *Id.* at 1007-08. Accordingly, the Federal Circuit vacated the judgment and remanded the action to this Court for further proceedings. *Id.* at 1009.

Following remand, the Court conducted a case management conference and invited the parties to propose constructions for disputed limitations in light of the Federal Circuit's opinion. The parties requested that the Court construe the limitations based on the parties' existing briefs and without entertaining further argument.

On June 25, 2019, the Court entered a second claim construction order. ECF No. 77. Discovery closed on November 1, 2019. ECF No. 82.

Apple then filed a motion for judgment on the pleadings, ECF No. 88, and a motion for summary judgment, ECF No. 96. The motion for judgment on the pleadings is under submission, and the motion for summary judgment, and related motions to exclude expert testimony, are scheduled for oral argument on May 6, 2020.

On March 2, 2020, Apple moved to dismiss this action for lack of standing. ECF No. 107. That motion is also scheduled for oral argument on May 6, 2020.

**II.     UNDISPUTED FACTS**[1]

On May 14, 2015, the patentee, Dr. Ness Stewart Irvine, transferred "all rights" to the patents-in-suit to InterAD Technologies, LLC. ECF No. 107-3 at 4-7. On May 19, 2015, InterAD assigned the patents-in-suit to Zeroclick I. ECF No. 107-4 at 2. On May 20, 2015, InterAD changed its name to Zeroclick, LLC. *Id.* at 4.

---

[1] No party disputes the authenticity or accuracy of the documents discussed herein, or their contents, which were filed by Apple and Zeroclick in connection with the present motion.

1    Documents generated from the website of the Office of the Comptroller of Texas state that
2    Zeroclick I was formed in Texas as a limited liability company, that it was registered on May 3,
3    2007, and that its Texas taxpayer number is 32031452835.  ECF No. 107-8 at 3.
4    On September 25, 2015, Zeroclick I filed this action against Apple, alleging that it was the
5    "owner and assignee" of the patents-in-suit.  ECF No. 1 ¶ 7.
6    On December 1, 2017, Zeroclick I was terminated as a limited liability company by Erich
7    Spangenberg, who is listed on the Certificate of Termination as the only "governing person" of
8    Zeroclick I.  ECF No. 107-10 at 2.  The Certificate of Termination further provides that the
9    termination was the result of a "voluntary decision to wind up the entity" that was made in
10   accordance with Texas law and "the governing documents of the entity."  *Id.* at 3.  The termination
11   became effective on December 1, 2017.  *Id.*
12   Zeroclick I has not filed any documents in response to the present motion to dismiss
13   showing what happened to Zeroclick I or its assets, including the patents-in-suit, after it was
14   terminated on December 1, 2017.
15   On July 30, 2019, pursuant to a "Transfer of Ownership Agreement," non-party Granicus
16   IP, LLC, transferred ownership of Zeroclick I to Dr. Irvine.  ECF No. 111-1 at 2.  The agreement
17   states that Granicus IP, LLC, was the "sole member" of Zeroclick I at the time of the transfer.  *Id.*
18   The agreement does not indicate what assets, if any, were held by Zeroclick I at the time of the
19   transfer.
20   On November 6, 2019, Dr. Irvine formed a new Zeroclick entity ("Zeroclick II"), which,
21   like Zeroclick I, is also named Zeroclick, LLC.  ECF No. 108-8 (operating agreement).  Dr. Irvine
22   is the sole member of Zeroclick II.  *Id.* at 2.  Documents generated from the website of the Office
23   of the Comptroller of Texas state that Zeroclick II was formed in Texas, that it was registered on
24   November 6, 2019, and that its Texas taxpayer number is 32072461745.  ECF No. 107-8 at 4.  The
25   taxpayer number of Zeroclick II is different from the taxpayer number of Zeroclick I.  *See id.* at 2-
26   4.
27   On January 14, 2020, Dr. Irvine entered into an "Assignment Agreement" with Zeroclick II
28   in which Dr. Irvine assigned to Zeroclick II "all rights" to the patents-in-suit.  ECF No. 108-10 at

2. This Assignment Agreement, which has not been recorded with the United States Patent Office, is silent as to how Dr. Irvine came to own any of the rights to the patents-in-suit that he purportedly assigned to Zeroclick II under the terms of that contract.

On February 12, 2020, Dr. Irvine was deposed in connection with this action. ECF No. 108-6. He testified that he created a "brand new" entity that is also called Zeroclick, that he "got [his] patents back," and that he "put them into this new company and I'm continuing the original lawsuit that was started by them." *Id.* at 4-5 (Dr. Irvine deposition testimony). When asked whether he had "signed any assignments from a previous company called Zeroclick to a brand new company called Zeroclick," Dr. Irvine responded that he had. *Id.*

On February 26, 2020, Zeroclick I served supplemental responses to Apple's first set of interrogatories, which state, in relevant part:

> On July 30, 2019, the sole member of Zeroclick, LLC transferred ownership in that entity to Dr. Nes Irvine, making him the sole member. Subsequently, Dr. Irvine dissolved the existing Zeroclick, LLC entity and reincorporated the entity (still Zeroclick, LLC) with a new operating agreement. Dr. Irvine further executed a confirmatory assignment of the patents-in-suit to the new entity.

ECF No. 107-9 at 3.

## III. LEGAL STANDARD

"Standing to sue is a threshold requirement in every federal action. Standing must be present at the time the suit is brought. The party bringing the action bears the burden of establishing that it has standing." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005) (internal citations omitted). A party bringing an infringement action "must meet both constitutional and prudential standing requirements." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 (Fed. Cir. 2007).

"To demonstrate the minimal constitutional standing requirements have been satisfied, '[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* at 1338-39 (citations omitted, alterations in original). "These requirements have been described as the injury in fact, traceability, and redressability inquiries." *Id.* at 1339. "Constitutional injury in fact occurs when a party performs

at least one prohibited action with respect to the patented invention that violates the[] exclusionary rights" bestowed by a patent grant, which include "the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention." *Id.* (citations omitted). "The party holding the exclusionary rights to the patent suffers legal injury in fact." *Id.* An entity that "lacks injury in fact" because it does not hold title to the exclusionary rights to the patent "lacks standing to be a party" under Article III in an action for patent infringement. *Id.* at 1341.

Prudential standing exists where the requirements set forth in the Patent Act for bringing a civil action are satisfied. "The Patent Act provides that '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Sicom Sys.*, 427 F.3d at 976 (quoting 35 U.S.C. § 281). "The term 'patentee' comprises 'not only the patentee to whom the patent was issued but also the successors in title to the patentee.'" *Id.* (quoting 35 U.S.C. § 100(d)). "However, if the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of holding constitutional standing to sue another for patent infringement in its own name." *Id.* (citations omitted).

## IV.     DISCUSSION

Apple moves to dismiss this action with prejudice on the ground that Zeroclick I lacks standing to sue for infringement of the patents-in-suit. Apple argues that Zeroclick I has been dissolved and lost ownership of the patents-in-suit, which caused it to lose standing in this action. Apple further argues that Zeroclick II cannot be substituted as a plaintiff because the record shows a break in the chain of title with respect to the patents-in-suit, and as a result of that break, Zeroclick I has not shown that Zeroclick II owns the patents-in-suit and has standing to sue for infringement thereof. In the alternative to dismissal of this action with prejudice, Apple requests that the Court strike all proceedings during which Zeroclick I lacked standing.

Zeroclick I opposes the motion, arguing that there is no standing defect because it is not the case that "there are two Zeroclicks," as Zeroclick, LLC, was merely "re-formed" by Dr. Irvine with a new operating agreement   ECF No. 111 at 4-5. In apparent contradiction to that argument,

1  Zeroclick also contends that any standing defect can be cured by "order[ing] an amendment to
2  conform to proof" that Zeroclick II is the "successor in interest" to Zeroclick I.  *Id.*

3  The Court concludes, based on the record before it, that Zeroclick I lacks standing and that
4  Zeroclick II cannot be substituted as a plaintiff because Zeroclick I has not shown that Zeroclick II
5  has standing to sue for infringement of the patents-in-suit.

6  It is undisputed that Zeroclick I was dissolved by Dr. Irvine at some point after July 30,
7  2019, and that it no longer holds any legal right to the patents-in-suit.  Accordingly, Zeroclick I
8  has lost constitutional standing to prosecute this patent-infringement action, rendering this action
9  moot.  *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202-03 (Fed. Cir.
10 2005) (holding that the plaintiff in patent-infringement action lost standing by assigning all rights
11 to the asserted patents to a non-party entity and that "the case became moot" as a result of the
12 plaintiff's loss of standing); *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282-83
13 (Fed. Cir. 2010) (holding that a party's assignment of "all its interests" in the patents-in suit,
14 including "any rights it may have" to sue the opposing party for damages, rendered the action
15 devoid of any "actual case or controversy" as between those parties).

16 Zeroclick I argues that its dissolution and loss of rights to the patents-in-suit did not create
17 a standing defect because Zeroclick I was "re-formed" by Dr. Irvine under a new operating
18 agreement and, as a result of that "re-formation," it is not the case that "there are two Zeroclicks."
19 ECF No. 111 at 4-5.  Zeroclick I, however, points to no evidence or authority to support its theory
20 that Zeroclick I and Zeroclick II are the same entity.  Further, Dr. Irvine's own deposition
21 testimony, and other documents submitted by Apple, contradict the notion that Zeroclick I and
22 Zeroclick II are the same entity.  *See* ECF No. 108-6 at 4-5 (Dr. Irvine's deposition testimony
23 stating that he created a "brand new company" also called Zeroclick, LLC); ECF No. 108-8
24 (operating agreement of Zeroclick II, stating that Zeroclick II was "formed" on November 6,
25 2019); ECF No. 107-8 at 2-4 (documents generated from the website of the Texas Office of the
26 Comptroller showing that Zeroclick I and Zeroclick II have different taxpayer numbers, dates of
27 registration, registered addresses, and registered agents).  Accordingly, the Court cannot find that
28 no standing defect exists on the basis that Zeroclick I and Zeroclick II are the same entity.

1    Zeroclick I next argues that, even if a standing defect was created by its dissolution and
2 loss of rights with respect to the patents-in-suit, that defect can be cured by substituting Zeroclick
3 II as plaintiff. ECF No. 111 at 6. But, because Zeroclick I has not established that Zeroclick II
4 has *any* rights to the patents-in-suit, the Court cannot conclude that the standing defect that has
5 mooted this action can be cured by substituting Zeroclick II as plaintiff.

6    Substitution of the plaintiff can cure a standing defect in a patent-infringement action only
7 where the Court can conclude that the new plaintiff has standing to sue for infringement. *See, e.g.*,
8 *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1371-72 (Fed. Cir. 2004)
9 (allowing joinder of new owner of patent rights where assignment of patent rights to the new
10 owner was not disputed); *Morrow*, 499 F.3d at 1343 (holding that, "[t]o demonstrate entitlement to
11 join" a patent infringement suit as plaintiff, an entity "must have the right to exclude others from
12 making, using, or selling the invention in the United States"). To have standing to sue for patent
13 infringement, the new plaintiff must have "sufficient exclusionary rights" in the patent-in-suit such
14 that it suffers an injury in fact from infringing activities. *See Morrow*, 499 F.3d at 1341. To
15 determine whether an entity has sufficient exclusionary rights to have standing to sue for
16 infringement, the Court must "trace the chain of title to the patent." *Enzo APA & Son, Inc. v.*
17 *Geapag A.G.*, 134 F.3d 1090, 1092 (Fed. Cir. 1998).

18    Here, there is a gap in the chain of title with respect to the patents-in-suit that prevents the
19 Court from concluding that Zeroclick II has sufficient exclusionary rights to be a plaintiff in this
20 patent-infringement action. This gap starts when Zeroclick I was terminated in 2017, and ends in
21 January 2020, when Dr. Irvine assigned the rights he purportedly had to the patents-in-suit to
22 Zeroclick II. Zeroclick I has submitted no evidence to show what happened to the ownership of
23 the rights to the patents-in-suit during that timeframe. Zeroclick also has not cited any authority
24 showing that a standing defect like the one here can be cured by substituting a new plaintiff when
25 the record shows a break in the chain of title. In the absence of evidence establishing that
26 sufficient exclusionary rights to the patents-in-suit were assigned to Dr. Irvine before he assigned
27 any such rights to Zeroclick II in January 2020, Zeroclick II would appear to have no standing.
28 *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367-68 (Fed. Cir. 2010) (vacating

district court's denial of motion to dismiss for lack of standing on the ground that a break in the chain of title to patents defeated standing).

Zeroclick I does not dispute that it was terminated in December 2017 pursuant to the Certificate of Termination filed with the Texas Secretary of State. *See* ECF No. 107-10 at 2. Zeroclick I has submitted no evidence to show what happened to Zeroclick I's assets, including the patents-in-suit, as a result of that termination. The only document that Zeroclick I submitted in response to Apple's present motion to dismiss shows that the ownership of Zeroclick I was transferred to Dr. Irvine in July 2019 pursuant to a "Transfer of Ownership Agreement" with non-party Granicus IP, LLC. ECF No. 111-1 at 2. The agreement, however, does not indicate what assets, if any, were held by Zeroclick I at the time of this transfer. *Id.* The agreement also is silent as to the patents-in-suit.

Zeroclick I argues in a footnote, without pointing to any evidence or authority, that all rights to the patents-in-suit remained with Zeroclick I between its 2017 termination until ownership of Zeroclick I was transferred to Dr. Irvine in 2019. *See* ECF No. 111 at 5 n.1. But the Court cannot simply assume, based on Zeroclick I's arguments alone, that ownership of all rights to the patents-in-suit remained with Zeroclick I notwithstanding its termination in 2017, because Texas law, which applies to entities formed in that state, requires that the assets of a limited liability company be distributed to creditors and owners before it is terminated. *See, e.g.*, Tex. Bus. Orgs. Code § 11.053 (providing that an entity "in the process of winding up shall apply and distribute its property to discharge, or make adequate provision for the discharge of, all of the domestic entity's liabilities and obligations," and, after that is done, the "entity shall distribute the remainder of its property, in cash or in kind, to the domestic entity's owners according to their respective rights and interests"); Tex. Bus. Orgs. Code § 11.101 ("On completion of the winding up process . . . a filing entity must file a certificate of termination in accordance with Chapter 4."). There is nothing in the record to support the notion that Zeroclick I retained any of its assets, including ownership of the patents-in-suit, notwithstanding its winding-up and termination in 2017. As noted above, Dr. Irvine was not an owner of Zeroclick I until July 2019, so the Court

8

cannot assume that he received any rights to the patents-in-suit as a result of the winding-up and termination of Zeroclick I in 2017.

Further, Zeroclick I has not explained how ownership of Zeroclick I could have been transferred to Dr. Irvine in July 2019 even though Zeroclick I was terminated in 2017.

Further still, the transfer of ownership of Zeroclick I to Dr. Irvine in July 2019 does not establish, or even suggest, that ownership of any rights to the patents-in-suit, which is the ownership that matters to the analysis here,[2] was transferred to Dr. Irvine at that time. Even if the Court assumes that Zeroclick I retained ownership of the patents-in-suit despite the 2017 termination, such that Zeroclick I still owned all rights to the patents at the time Dr. Irvine became the owner of Zeroclick I in July 2019, that still would not show that Dr. Irvine became the owner of any rights to the patents-in-suit when he became the owner of Zeroclick I. Ownership of the patents-in-suit would have remained with Zeroclick I in the absence of an assignment of the patents-in-suit from Zeroclick I to Dr. Irvine. There is no evidence of any such assignment.

Notably, Dr. Irvine was asked at his deposition whether he had "signed any assignments from a previous company called Zeroclick to a brand new company called Zeroclick," and he responded that he had. *See* ECF No. 108-6 at 4-5. Zeroclick I has not filed the purported assignments of the patents-in-suit from Zeroclick I to Zeroclick II.

In the absence of a showing that Zeroclick II has sufficient exclusionary rights with respect to the patents-in-suit, Zeroclick II lacks injury in fact and therefore lacks constitutional standing to be a plaintiff in this patent-infringement action. Accordingly, the Court concludes, based on the

---

[2] Dr. Irvine's acquisition of Zeroclick I in July 2019 does not establish that Dr. Irvine also acquired ownership of any patent rights that Zeroclick I might have held at that time. The Federal Circuit has recognized that there is a difference between having a beneficial interest in an entity that possesses rights to a patent, and having ownership of rights to the patent itself. The latter is relevant and material to the standing inquiry; the former is not. *See, e.g.*, *Morrow*, 499 F.3d at 1343 (holding that an entity's "beneficial ownership interest" in another company that held rights to the patent-in-suit "does not affect the outcome of [the] standing analysis" because "whatever interests in the '647 patent may flow to [the first entity] in the future are insufficient to convert its equitable future interests in the patent into full legal exclusionary interests" that would permit the first entity to sue in the present suit).

9

current record, that the standing defect created by Zeroclick I's dissolution and loss of rights to the patents-in-suit cannot be cured by substituting Zeroclick II as plaintiff.

## V.     CONCLUSION

For the foregoing reasons, the Court orders Zeroclick I to show cause why this action should not be dismissed for lack of standing. Within 21 days of the date this order is filed, Zeroclick I shall file a brief and supporting evidence establishing the chain of title to the patents-in-suit, from Zeroclick I's termination in 2017 until January 2020, when Dr. Irvine transferred to Zeroclick II the rights he purportedly had to the patents-in-suit. Apple may file a response to Zeroclick I's brief within seven days of the date Zeroclick I's brief is filed. At that time, the Court will take Apple's motion to dismiss for lack of standing under submission without a hearing.

The hearings on Apple's motion to dismiss for lack of standing, Apple's motion for summary judgment, and motions to exclude expert testimony related to Apple's motion for summary judgment, which are currently scheduled for May 6, 2020, are vacated. The Court may reschedule these hearings to a later date if the Court, in its discretion, finds that a hearing is necessary.

**IT IS SO ORDERED.**

Dated: April 23, 2020

_____
JON S. TIGAR
United States District Judge